IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

POOL SCOUTS FRANCHISING, LLC,

      Plaintiff,

v.                                                               Civil Action No. 2:24-cv-239

STUART ROAD CORP. & BRENT
BERRIDGE,

      Defendants.

### <u>MEMORANDUM OPINION</u>

This case involves a franchise dispute. Plaintiff, Pool Scouts Franchising, LLC ("Pool Scouts"), "is a franchisor for residential pool and spa cleaning, maintenance, and repair services throughout the United States." Compl. ¶ 7, ECF No. 1. Defendant, Brent Berridge, entered into franchise agreements on behalf of his business, Defendant Stuart Road Corporation ("Stuart Road"). *Id.* ¶ 11. After the parties entered into these agreements, their relationship soured and this lawsuit followed. Pool Scouts alleges Berridge and Stuart Road breached their agreements and violated the Defend Trade Secrets Act and has sought injunctive relief to prevent future breaches and violations. Berridge and Stuart Road have counterclaimed, alleging they were fraudulently induced to enter into the franchise agreements, and asserting violations of the Texas Deceptive Trade Practices Act, fraud in the inducement, and constructive fraud. All parties have filed motions to dismiss, as well as numerous other related motions.

For the reasons stated below, Berridge's Motion for Leave to File Supplementary Evidence is granted,[1] and Pool Scouts' Motion for Preliminary Injunction is denied. Pool Scouts is granted leave to amend Count IV and accordingly Berridge's Motion to Dismiss Count IV of the Complaint is denied as moot. Pool Scouts' Motion to Dismiss the Counterclaim is granted in part and denied in part. Berridge's Motion to Amend/Correct the Answer and Counterclaim is denied.

## I.     BACKGROUND

### A. Franchise Agreements

Berridge, on behalf of Stuart Road, entered into four franchise agreements between 2018 and 2020 to establish Pool Scouts franchises in four territories in Texas. Compl. ¶ 4; Franchise Agreements, ECF Nos. 1-1, 1-2, 1-3, 1-4. These Agreements are substantially the same, differing only in the applicable territory. *See* Franchise Agreements.

Under the agreements, Pool Scouts provided Berridge "with training in franchise operation, marketing, advertising, sales, and business systems and provided ongoing business advice" and coaching to the franchisees. Compl. ¶ 12. Pool Scouts also claims that it provided access to "confidential operating, marketing, sales, and advertising materials." *Id.* Some of the materials provided include alleged trade secrets that Pool Scouts required to be returned "upon termination or expiration of the Franchise Agreements." *Id.* ¶¶ 74–80.

Specifically, Berridge and Pool Scouts agreed that, following any termination, Berridge would:

> stop using all literature, information, documents, data and other materials received from, or made available by Pool Scouts; pay all amounts owing to Pool Scouts, including the outstanding Royalty and Service Fees and Marketing Fees; transfer to Pool Scouts all telephone numbers, listings and advertisements used in relation

---

[1]     For simplicity, the Court refers to Berridge and Stuart Road collectively as "Berridge" when discussing their motions and arguments. The Court continues to refer to them separately when discussing the factual circumstances underlying this matter.

> to the Franchises; deliver to Pool Scouts copies, including electronic copies of lists and other sources of information containing the names and contact information of customers, potential customers, suppliers, and vendors of the Franchises; deliver to Pool Scouts all customer files, data and information, records, accounts and account information in any form, and not retain any copies of those materials; and adhere to the Franchise Agreements' post-termination non-competition and non-solicitation covenants.

*Id.* ¶ 18. The parties agreed that for two years following the end of each Franchise Agreement, Berridge would not "directly or indirectly, be employed by, work with, be engaged in, be interested in or advise, invest or contribute money to, lend money to or guarantee the debts or obligations of" any similar business within fifteen miles of each franchise territory. *Id.* ¶ 19. Berridge also agreed that he would not solicit a business relationship "with any of their customers, suppliers, or strategic partners." *Id.* ¶¶ 19–20.

Berridge also made certain agreements regarding proprietary information under the Franchise Agreements, including that he would not share certain confidential information and would immediately return such information following the termination of each franchise. *Id.* ¶¶ 21, 81. He also was prohibited from using customer and account information and vendor information for other business interests. *Id.* Lastly, Berridge agreed that if he violated any of his obligations, injunctive relief would be warranted. *Id.* ¶¶ 22–26.

**B. Termination of the Franchise Agreements and Pool Scouts' Claims**

Pool Scouts alleges that Berridge and Stuart Road own and are operating a competing pool servicing business, "Super Pools Texas," in violation of the Franchise Agreements. *Id.* ¶¶ 34–35. According to Pool Scouts, on February 1, 2024, Berridge and Stuart Road sent an email to all customers indicating separation from Pool Scouts and continued provision of services. *Id.* ¶ 36. The next day, Stuart Road posted about its "new name" on a Facebook page for Super Pools Texas. *Id.* ¶ 43. Four days later, Pool Scouts sent Berridge a letter terminating their Franchise Agreements. *Id.* ¶ 27; *see* Termination Not., ECF No. 1-5. In this letter, Pool Scouts' counsel reminded Berridge

about his post-termination obligations under the Agreements. Termination Not. at 1–4. Following the letter, Berridge claimed that Super Pools Texas was being shut down. Compl. ¶ 37. However, Pool Scouts alleges that Berridge actually continues to operate a competing business. *Id.* ¶ 46.

Pool Scouts alleges that Berridge has breached the post-termination obligations under the Franchise Agreements by failing to pay amounts due, continuing to operate a pool cleaning business within fifteen miles of franchise territory, soliciting Pool Scouts' clients, and retaining certain alleged trade secrets. *Id.* ¶¶ 29–47. Accordingly, Pool Scouts brings two breach of contract claims, a breach of guaranty claim, and a claim under the Defend Trade Secrets Act. *Id.* ¶¶ 48–86. Additionally, Pool Scouts seeks an injunction against Berridge and Stuart Road, moving to preclude them "from acting in clear violation of the covenants not to compete or solicit . . . and to prevent [them] from possessing, using, or disseminating confidential, proprietary trade secret materials." Mem. Supp. Prelim. Inj. at 1, ECF No. 7.

### C. Origination of the Parties' Relationship and Berridge's Claims

Berridge does not contest that the Franchise Agreements generally governed his relationship with Pool Scouts. However, Berridge alleges that Pool Scouts fraudulently induced him to enter into the Franchise Agreements. He alleges that Pool Scouts contacted him about starting a franchise in 2018 and sent him a 2018 Franchise Disclosure Document ("2018 Disclosure"). Countercl. ¶¶ 9–10, ECF No. 23. Berridge alleges that the 2018 Disclosure included representative financial information for the previous year from local operations in Virginia Beach, setting forth a representation "of what a franchisee would incur in its operations and the potential net profit margin for a franchisee." *Id.* ¶ 11. Berridge asserts that Pool Scouts representatives confirmed that the document's information was an accurate reflection of franchisee operations and costs. *Id.* ¶¶ 11, 13–14. Additionally, Pool Scouts' representative conveyed to Berridge that

personal operation of the franchise would be possible without hiring staff. *Id.* ¶ 12. These assurances were confirmed to Berridge in-person at a 2018 recruiting event. *Id.* ¶ 13. Pool Scouts employees also represented to Berridge that "Pool Scouts franchisees would receive discounted pricing on supplies from Pool Scouts' exclusive supplier, POOLCORP." *Id.* Berridge alleges that he relied on these assurances in becoming a franchisee. *Id.* ¶¶ 14–15, 52–53.

Berridge maintains that several of the assurances made to him by Pool Scouts were not borne out. Berridge claims that Stuart Road was ultimately required to hire up to ten technicians to operate the franchise, Berridge had to create his own guidance materials and a technician training manual, and Stuart Road did not receive discounted pricing on supplies. *Id.* ¶¶ 22–23, 29, 31. With respect to the last assertion, Berridge alleges that, after six months of purchasing supplies from POOLCORP, an employee of the supplier disclosed to Berridge that Stuart Road's pricing as a Pool Scouts franchisee "was much higher than the usual pricing for other POOLCORP customers." *Id.* ¶ 29. The employee further explained that "the Pool Scouts pricing was not discounted" and that "many of [the prices agreed upon by Pool Scouts and POOLCORP] were much higher than what Berridge would have paid if Stuart Road were not a Pool Scouts franchisee." *Id.* ¶ 30. The POOLCORP employee then went on to sell Berridge supplies at the cheaper non-Pool Scouts prices. *Id.* ¶ 31.

In 2020, upon receiving an updated 2020 Franchise Disclosure Document ("2020 Disclosure"), Berridge contacted the then-Pool Scouts President to discuss franchisee profitability. *Id.* ¶¶ 32–33. Berridge alleges that he again received assurances regarding profitability and the accuracy of the 2020 Disclosure, even though Berridge and Stuart Road had yet to make a profit two years into franchise operation. *Id.* ¶¶ 33–34. Berridge further alleges that he spoke with Pool Scouts representatives on multiple occasions and "was always assured by [them] that multiple

5

other franchisees were successful, with some making over twenty percent (20%) net profit margin." *Id.* ¶ 38.

In July 2023, upon reviewing Stuart Road's financials, Berridge learned that Stuart Road continued to lose money, despite growing revenue, "because of the high cost of operating the business." *Id.* ¶ 41. Following this review, Berridge contacted other Pool Scouts franchisees and "learned they had similar experiences with increased revenues, but low or nonexistent profits." *Id.* ¶ 42. During these conversations, Berridge discovered that a franchisee "who Pool Scouts represented to Berridge as having some of the highest net profit margins," had only made a three percent net profit margin the previous year. *Id.* ¶ 43. Additionally, "[n]umerous other Pool Scouts franchisees also reported profits that were markedly lower than the Net Profit Margin and Operating Profit reported by Pool Scouts in its 2018 and 2020 [Disclosures]." *Id.* ¶ 44. These conversations, along with Stuart Road's own records, led Berridge to conclude "that the reported Net Profit Margins . . . from the 2020 [Disclosure] [were] impossible for a Pool Scouts franchisee to achieve." *Id.* ¶ 45.

Berridge alleges that Pool Scouts knew or should have known that financial information in "Item 19 of its 2018 and 2020 [Disclosures], and orally confirmed by its representatives, was inaccurate and misleading." *Id.* ¶ 47. Berridge learned in May 2024 from a former Pool Scouts employee "that this employee had informed Pool Scouts management about the inaccuracies in its budget templates that were being provided to franchisees." *Id.* ¶ 55. Despite receiving this information, Pool Scouts continued to provide these templates to franchisees. *Id.* Pool Scouts knew that the Virginia Beach locations used as representative franchisees "were not representative of other franchisees" because they had lower costs of business by virtue of having administrative

support employees located at the franchisor. *Id.* ¶ 48. Pool Scouts also knew that franchisees were "paying higher prices for supplies" than other POOLCORP customers. *Id.*

As for Pool Scouts' allegations regarding Super Pools Texas, Berridge denies continued ownership of the alleged competing business. *See* Resp. Prelim. Inj. at 16, ECF No. 24. Berridge opposes Pool Scouts' Motion for Preliminary Injunction and seeks to supplement his response to the Motion for Preliminary Injunction with additional facts in support of his Counterclaim.

## II.    PRELIMINARY MATTERS

Before turning to the parties' motions to dismiss, it is necessary to first address other outstanding motions. For the reasons set forth below, Berridge's Motion for Leave to File Supplementary Evidence, ECF No. 41, is granted, and Pool Scouts' Motion for Preliminary Injunction, ECF No. 6, is denied.

### A. Motion for Leave to File Supplementary Evidence

Berridge requests leave to supplement his opposition to Pool Scouts' Motion for Preliminary Injunction. Berridge would like the Court to consider two additional declarations: one from a current Pool Scouts franchise owner, and one from a former Pool Scouts franchise owner. Mem. Supp. Mot. Suppl. Evid. at 2, ECF No. 42; Bloise Decl., ECF No. 42-1; Clark Decl., ECF No. 42-2. Pool Scouts opposes Berridge's request, arguing that the declarations are not relevant to the motion, and that one is unsigned and does not contain new information appropriately presented in a supplement. Resp. Mot. Suppl. Evid. at 2–4, ECF No. 45. Having considered the arguments of both parties, the Court grants Berridge's Motion for Leave.

This Court's local rules provide that "further briefs or written communications may be filed" with leave of Court. E.D. Va. Loc. Civ. R. 7(F)(1). Leave should be freely given to supplement the record at the Court's discretion, unless there is a risk of prejudice, undue delay,

trial inconvenience, futility, or bad faith. *See Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, No. 4:15-cv-140, 2016 WL 4257039, at *2 (E.D. Va. Aug. 10, 2016) (employing the Federal Rule of Civil Procedure 15(d) test in deciding motions for leave under the local rule). Further, declarations may be considered when analyzing a motion for preliminary injunction as such motions are "customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Given this relative informality, "district courts may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted." *G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 725–26 (4th Cir. 2016), *vacated on other grounds*, 580 U.S. 1168 (2017).

The Court's goal in deciding whether to grant leave to supplement is to fairly resolve the parties' underlying dispute. No evidence of prejudice, undue delay, trial inconvenience, futility, or bad faith exists here. Accordingly, the Court will consider the Declarations in its analysis, but will consider Pool Scouts' arguments in assessing what weight, if any, to give the Declarations. *See G.W. Aru, LLC v. W.R. Grace & Co.-Conn*., No. 22-2636, 2023 WL 5434666, at *2 (D. Md. Aug. 23, 2023). Berridge's Motion for Leave to File Supplementary Evidence is granted.

## B. Motion for Preliminary Injunction

A party seeking a preliminary injunction "must establish that [it is] likely to succeed on the merits, that [it is] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Id.* at 24. The "[p]laintiff bears the burden of establishing that

each of these factors supports granting the injunction." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).

Pool Scouts seeks to enjoin Berridge from violating "the covenants not to compete or solicit in their franchise agreements" and from "possessing, using or disseminating confidential, proprietary trade secret materials" that were "wrongfully retained after termination" of the Franchise Agreements. Mem. Supp. Prelim. Inj. at 1. The Court has separately considered the *Winter* factors in its preliminary injunction analysis. *See Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). While Pool Scouts has demonstrated a likelihood of success on the merits, it has not met its burden as to irreparable harm. Accordingly, Pool Scouts' Motion for Preliminary Injunction is denied.

### 1. Likelihood of Success on the Merits

Pool Scouts has shown that it is likely to succeed on the merits of at least one of its claims. *See Winter*, 555 U.S. at 20.[2] To demonstrate a likelihood of success on the merits, Pool Scouts must "make a clear showing that [it] is likely to succeed at trial," but need not demonstrate a "certainty of success." *Di Biase*, 872 F.3d at 230 (citation omitted). The Court may take "as true 'all of the well-pleaded allegations of the complaint and uncontroverted affidavits filed in support of the motion for a preliminary injunction.'" *JTH Tax, Inc. v. Aime*, No. 2:16-cv-279, 2016 WL 4182743, at *4 (E.D. Va. Aug. 3, 2016) (quoting *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976))

---

[2]     To gain injunctive relief, Pool Scouts need only demonstrate a likelihood of success on one of the claims asserted in its Complaint. *See e.g.*, *W. Indus.-North, LLC v. Lessard*, No. 1:12-cv-177, 2012 WL 966028, at *2 (E.D. Va. Mar. 21, 2012). Here, Pool Scouts specifically argues that it is likely to succeed on the merits of Counts II and IV. Mem. Supp. Prelim. Inj. at 13–19. Pool Scouts refers to Count II in its briefing on the Motion for Preliminary Injunction as "Count I," however, a review of the Complaint and the argument in briefing confirms that Pool Scouts intended to argue that it was likely to succeed on the merits of Count II. Mem. Supp. Prelim. Inj. at 16; Compl. ¶¶ 52–63.

(cleaned up). However, "[a] plaintiff seeking a preliminary injunction generally cannot rely on mere allegations in the complaint but must come forward with some evidence showing a likelihood of success on the merits." *Mahmoud v. McKnight*, 102 F.4th 191, 203 (4th Cir. 2024), *cert granted sub nom. Mahmoud v. Taylor*, No. 24-297, 2025 WL 226842 (U.S. Jan. 17, 2025). Finding that Pool Scouts is likely to succeed on the merits of Count II, the Court does not analyze the remaining counts.

Pool Scouts alleges in Count II that Berridge breached the Franchise Agreements by violating their non-competition and non-solicitation provisions. Compl. ¶¶ 52–63. Berridge counters that Pool Scouts cannot prove a breach of the Franchise Agreements because Pool Scouts fraudulently induced him to enter into the Franchise Agreements—thus invalidating the Agreements—and violated the Texas Deceptive Trade Practices Act ("DTPA"). Pool Scouts contends that Berridge's counterclaims fail on their merits and are barred by valid releases and the applicable statutes of limitations. The Court will first consider Berridge's counterclaims, as a showing of likely success by Berridge would negate any likelihood of success by Pool Scouts on its breach of contract claim. *See George Robberecht Seafood, Inc. v. Maitland Bros. Co.*, 255 S.E.2d 682, 683 (Va. 1979) (stating that fraudulent inducement "is always ground for rescission of the contract" (quoting *Wilson v. Carpenter*, 21 S.E 243, 244 , 187 (Va. 1895))); *see also Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 825–26 (Tex. 2012) (holding that the DTPA authorizes the remedy of rescission).

The Court finds that Berridge's counterclaims are likely barred by the relevant statutes of limitations. Although there is some dispute as to the applicable statute of limitations (either Virginia or Texas), the Court has determined that a two-year statute of limitations would likely

apply.[3] *See* Va. Code Ann. § 801-243(A) (common law fraud); Tex. Bus. & Com. Code § 17.565 (DTPA). Both Virginia and Texas's relevant statutes of limitations provide that a fraud claim and a DTPA claim, respectively, accrue when the fraud or deceptive act is discovered or through the exercise of due diligence reasonably should have been discovered. Va. Code Ann. § 8.01-249(1); Tex. Bus. & Com. Code § 17.565.

Virginia's discovery rule requires determination of whether Berridge should have reasonably discovered fraud by the exercise of due diligence. *See Jones v. Shooshan*, 855 F. Supp. 2d 594, 604 (E.D. Va. 2012) (applying Virginia law). The question of whether Berridge exercised due diligence is a question of fact. *Id.* Here, due diligence is "a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances; not measured by any absolute standard but depending on the relative facts of the special case." *Schmidt v. Household Fin. Corp., II*, 661 S.E.2d 834, 839 (Va. 2008) (citation omitted). Texas's discovery rule similarly hinges on the exercise of reasonable diligence. *See* Tex. Bus. & Com. Code § 17.565 (providing that the claim accrues when "the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice"). From the facts presented to the

---

[3]     The parties disagree regarding whether Virginia law governs Berridge's asserted tort counterclaims. *See* Pl's Mot. at 6–8, ECF No. 35; *see also* Resp. Prelim. Inj. at 9 n.1. As discussed below, the Court has determined that Texas law governs. *See infra* Part III.C.2.a. This determination does not resolve the question of which state's statute of limitations applies to each claim. However, under Virginia's choice of law rules, the DTPA's statute of limitations likely applies to Berridge's DTPA claim, while Virginia's statute of limitations likely applies to Berridge's common law fraud claims. *See Jones v. R.S. Jones Assocs., Inc.*, 431 S.E.2d 33, 33–36 (Va. 1993); *see also Olawole v. ActioNet, Inc.*, 258 F. Supp. 3d 694, 703–04 (E.D. Va. 2017). Under either statute of limitations, all counterclaims must have accrued on or after April 11, 2022. Va. Code Ann. § 801.243(A); Tex. Bus. & Com. Code § 17.565; Compl. (filed on April 11, 2024).

Court on the Motion for Preliminary Injunction, it appears likely that Berridge should have discovered the alleged fraud via the exercise of due diligence.

Berridge alleges that he did not discover any fraud until July 2023 when he initiated conversations with other franchisees. Countercl. ¶ 45. However, numerous allegations in the Counterclaim as well as materials provided by both parties suggest such claims could have been discovered earlier. For example, the Counterclaim alleges that in October 2018, Berridge hired Stuart Road's first employee, despite assurances from Pool Scouts that Berridge could operate the franchise without hiring any administrative staff. *Id.* ¶¶ 12, 22. Berridge discovered that he was not receiving discounted pricing from POOLCORP six months after beginning to purchase supplies and tools, in May of 2018. *See id.* ¶¶ 29–31; *see also* Burch 2d Aff. at 81–83, ECF No. 30-14 (reflecting first order from POOLCORP in May 2018). As of Spring of 2020, Stuart Road had yet to make a profit. Countercl. ¶¶ 33–34.

"Based on these facts, a reasonable and prudent person would [have] suspect[ed] that something was amiss," *Schmidt*, 661 S.E.2d at 840, yet it was not until July of 2023 that Berridge reached out to other franchisees to investigate. *See Zewng v. Wang*, 906 S.E.2d 668, 680 n.12 (Va. Ct. App. 2024) (finding that appellant was on inquiry notice where appellant failed to investigate after repeatedly receiving bad news regarding profitability); *Bayou Bend Towers Council of Co-Owners v. Manhattan Const. Co.*, 866 S.W.2d 740, 744 (Tex. App. 1993) (holding that the statute of limitations under the DTPA began to toll where plaintiff was "under a duty to undertake further inquiry to discover the nature of the damage it suffered" and did not do so). Pool Scouts is likely to show that Berridge reasonably should have investigated as early as 2018, well more than two

years before the initiation of this action. Because of this, Berridge is not likely to succeed on the merits of his counterclaims.[4]

Apart from the allegations raised in the counterclaims, Berridge does not raise any factual disputes as to the merits of Pool Scouts' Count II breach of contract claim. The Fourth Circuit has confirmed that "findings are not required in a case in which there are no factual disputes." *First-Citizens Bank & Trust Co. v. Camp*, 432 F.2d 481, 484 (4th Cir. 1970). Given that there is no factual dispute as to Count II, notwithstanding the previously addressed counterclaims, the Court finds that Pool Scouts is likely to succeed on the merits of its Count II breach of contract claim.

### 2. Likelihood of Suffering Irreparable Harm in the Absence of Preliminary Relief

Pool Scouts has failed to demonstrate a likelihood of suffering irreparable harm. "To establish irreparable harm, the movant must make a 'clear showing' that it will suffer harm that is 'neither remote nor speculative, but actual and imminent.'" *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 (4th Cir. 2019) (quoting *Direx Israel, Ltd.*, 952 F.2d at 812). Additionally, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)). Where compensatory or other monetary relief can remedy the harm suffered, there is a presumption that injunctive relief is not warranted. *Di Biase*, 872 F.3d at 230 (citing *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994)). Movants

---

[4]    The parties are cautioned against improperly equating "likelihood of success" with "success." A finding of likelihood of success on the merits at the preliminary injunction stage is not "tantamount to decisions on the underlying merits." *Camenisch*, 451 U.S. at 394.

can overcome this presumption only by showing "extraordinary circumstances" giving rise to irreparable harm. *Hughes Network Sys., Inc.*, 17 F.3d at 694.

Pool Scouts argues that it is irreparably harmed via the loss of customer goodwill and loyalty, the loss of business opportunities and relationships, loss of customers, loss of franchisee stability, loss of ability to sell other franchises, loss of value in confidential business information, loss of competitive advantage at Berridge's former franchise locations, and the risk of loss of trade secrets. The Court will not consider the potential loss of trade secrets in calculating the likelihood of irreparable harm. As discussed below, the Court has granted Pool Scouts leave to amend its claim under the Defense Against Trade Secrets Act. *See infra* Part III.B.2.b. Pool Scouts is unable to make a clear showing that it is likely to suffer irreparable harm based on a claim that failed to adequately allege the existence of a trade secret. *See, e.g., Dewberry-Goodkind, Inc. v. Edgewood Props., Inc.*, No. 1:10-cv-118, 2010 WL 11699621, at *2 (E.D. Va. Nov. 16, 2010).

Pool Scouts also argues that Berridge agreed in advance, through the Franchise Agreements, to findings of "irreparable injury . . . for which money damages may not adequately compensate," and that a court could enjoin Berridge for violating the Franchise Agreements "without Pool Scouts having a duty to post a bond as a condition" of any preliminary injunction. Mem. Supp. Prelim. Inj. at 2. Regardless of any contractual agreement, the Court must make its own discretionary findings—particularly where Berridge contests the validity of the Franchise Agreements. *See e.g., Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1266 (10th Cir. 2004) ("While courts have given weight to parties' contractual statements regarding the nature of harm and attendant remedies that will arise as a result of a breach of a contract, they nonetheless characteristically hold that such statements alone are insufficient to support a finding of irreparable harm and an award of injunctive relief.") (collecting cases).

Pool Scouts has identified five former customers that have continued to be served by Super Pools Texas following the termination of the Franchise Agreements. *See* Mem. Supp. Prelim. Inj. at 10–11; *see also* Burks Aff. ¶¶ 8, 15, ECF No. 8; Wagner Aff. ¶¶ 9–11, ECF No. 10. However, Pool Scouts only makes passing conclusory statements regarding harm to reputation, loss of goodwill, damage to its franchise business, and loss of customers. Mem. Supp. Prelim. Inj. at 20–21. The same is true for the declarations offered in support. Wagner Aff. ¶¶ 14, 15 (listing conclusory losses such as "loss of customer goodwill and loyalty" and "loss of business opportunities and relationships to provide cleaning and service of pools and spas and related services"). Without more, the Court cannot find that Pool Scouts has met its burden to make a "clear showing" of a likelihood of irreparable harm. *Mountain Valley Pipeline*, 915 F.3d at 216 (citation omitted).

Admittedly, the "threat of a permanent loss of customers and the potential loss of goodwill" will generally "support a finding of irreparable harm." *Update, Inc. v. Samilow*, 311 F. Supp. 3d 784, 796 (E.D. Va. 2018) (citation omitted). However, that is not always true, especially where a movant fails to "advance evidence suggesting that . . . even if it has or will suffer damages, that such damages are irreparable." *Bank of Am. Inv. Servs., Inc. v. Byrd*, Nos. 2:09-cv-211, 2:09-cv-212, 2009 WL 10184606, at *7 (E.D. Va. June 15, 2009) (finding that the plaintiff failed to establish that monetary damages were an insufficient remedy). Such is the case here. Pool Scouts has offered evidence of loss of customers but has not offered any evidence, beyond conclusory statements, as to why the loss of customers cannot be adequately compensated with monetary damages. *See Prudential Servs., Inc. v. Plunkett*, 8 F. Supp. 2d 514, 518–19 (E.D. Va. 1998) (finding that alleged losses of commissions on accounts switched to the defendant could be quantified).

Additionally, the evidence of damages offered, i.e. the identified five lost clients, is unlike those cases where courts have held that movants have made a showing of likely irreparable harm. *Compare with Variable Annuity Life Ins. Co. v. Coreth*, 535 F. Supp. 3d 488, 517–18 (E.D. Va. 2021) (finding irreparable harm where the evidence showed that seventy-one clients had already been lost and clients continued to transfer accounts, that clients were expressing concern about repeated solicitations and data privacy, and that the defendants admitted to possessing various trade secrets). Without more, the Court cannot say that Pool Scouts is *likely* to show irreparable harm or that any harm is not compensable by monetary damages. As argued, this is not the type of "extraordinary circumstance" giving rise to irreparable harm. *Hughes Network Sys., Inc.*, 17 F.3d at 694.

Having determined that Pool Scouts fails to show a likelihood of irreparable harm in the absence of preliminary relief, the Court need not address the balance of the equities or the public interest. *See Frazier v. Prince George's Cnty.*, 86 F.4th 537, 544 (4th Cir. 2023). Accordingly, Pool Scouts' Motion for Preliminary Injunction is denied.

### III.    CROSS MOTIONS TO DISMISS

The Court next turns to the cross motions to dismiss. Berridge moves to dismiss Count IV of the Complaint for failure to state a claim, ECF No. 21, and Pool Scouts moves to dismiss Berridge's Counterclaim for failure to state a claim, ECF No. 35. The Court has determined that the issues are adequately presented in the briefing, and a hearing is not necessary. E.D. Va. Loc. Civ. R. 7(J). Accordingly, the matters are ripe for adjudication and the Court will address each in turn.

## A. Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint to determine whether a plaintiff has properly stated a claim upon which relief can be granted. Such a motion should be granted if a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Accordingly, to survive dismissal, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), with all allegations taken as true and all reasonable inferences drawn in the plaintiff's favor. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up).

Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Id.*; *see also Twombly*, 550 U.S. at 555 (stating that the complaint "requires more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action" (cleaned up)). A court "need not accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotation marks and citations omitted).

**B. Berridge's Motion to Dismiss Count IV**

Berridge moves to dismiss Count IV of Pool Scouts' Complaint asserting a violation of the Defend Trade Secrets Act. Defs.' Mot to Dismiss, ECF No. 21; Mem. Supp. Defs.' Mot., ECF No. 22. Pool Scouts opposed the motion and alternatively requested leave to amend its Complaint, and Berridge replied. Resp. Defs.' Mot. at 10–11, ECF No. 33; Reply Defs.' Mot., ECF No. 39. For the reasons stated below, the Court grants Pool Scouts leave to file an amended complaint and the Motion to Dismiss Count IV, ECF No. 21, is denied as moot.

1. Background[5]

As set forth above, Pool Scouts alleges that it owns trade secrets that include "client lists and files, methods of operation, private customer information, training in franchise operation, marketing, advertising, sales, and business systems, marketing strategies, and operations manuals that contain [Pool Scouts'] valuable and guarded trade secrets." Compl. ¶ 74. The trade secrets "derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *Id.* ¶ 76. Because the trade secrets are only provided to franchisees under a franchise agreement, they "are not readily ascertainable by the public." *Id.* ¶¶ 77–78. Additionally, Pool Scouts "has taken extensive measures to preserve and protect" its trade secrets to maintain a competitive advantage. *Id.* ¶ 80. Some of these measures include limiting the use of trade secrets by franchisees to the operation of a Pool Scouts franchise and

---

[5]    The factual allegations forming the basis for Pool Scouts' claims are set out as they are pleaded in its Complaint, construing the facts in the light most favorable to Pool Scouts. *See Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020). Pool Scouts attached to its Complaint the four Franchise Agreements. ECF No. 1-1; ECF No. 1-2; ECF No. 1-3; ECF No. 1-4. The Court considers these documents in the Motion to Dismiss, finding that the documents (1) were attached to the Complaint; (2) were relied upon and integral in the Complaint; and (3) that Berridge does not dispute their authenticity. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

requiring that franchisees immediately return trade secrets to Pool Scouts "upon termination or expiration of the Franchise Agreements." *Id.* Pool Scouts alleges that Berridge used these trade secrets without authorization "for [his] own economic benefit and with the intention and knowledge that such conduct would irreparably injure Pool Scouts' goodwill and reputation," and that Pool Scouts has suffered such injury because of this disclosure. *Id.* ¶¶ 83–84.

### 2. Analysis

The owner of a trade secret can bring a civil action for its misappropriation "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). "To prevail on such a claim, a plaintiff must accordingly establish (1) the existence of a trade secret, (2) the trade secret's misappropriation, and (3) that the trade secret implicates interstate or foreign commerce." *dmarcian, Inc. v. dmarcian Europe BV*, 60 F.4th 119, 141 (4th Cir. 2023). Berridge argues that Pool Scouts' allegations regarding the existence of trade secrets and the presence of misappropriation are conclusory and fail to state a plausible claim under the Defend Trade Secrets Act. The Court agrees.

#### a. Existence of Trade Secrets

To properly make out a claim for misappropriation under the Defend Trade Secrets Act, a plaintiff must first plead the existence of a trade secret. *See dmarcian, Inc.*, 60 F.4th at 141.[6] The term trade secret is defined in the statute as:

---

[6]    Pool Scouts argues that Berridge's Motion is premature as "the existence of a trade secret 'ordinarily presents a question of fact to be determined by the fact finder from the greater weight of the evidence.'" *Synopsys, Inc. v. Risk Based Security, Inc.*, 70 F.4th 759, 769 (4th Cir. 2023) (quoting *MicroStrategy, Inc. v. Li*, 601 S.E.2d 580, 589 (Va. 2004)). While that is generally true, dismissal on a motion to dismiss is appropriate where the pleading of a trade secret fails to rise to the level of plausibility. *See, e.g.*, *JTH Tax LLC v. Cortorreal*, No. 2:23-cv-0355, 2024 WL 897605, at *5 (E.D. Va. Mar. 1, 2024). Accordingly, the Court finds that the instant motion is not premature.

all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing.

18 U.S.C. § 1839(3). Here, Pool Scouts must allege: (1) that the alleged trade secret has independent economic value which is tied to the information's secrecy; and (2) that the owner of the alleged trade secret has taken reasonable measures to protect its secrecy. *See Synopsys, Inc. v. Risk Based Security, Inc*., 70 F.4th 759, 764 (4th Cir. 2023); *see also* § 1839(3)(A)–(B). Upon review of the alleged facts, the Court finds that Pool Scouts fails to plead the existence of a trade secret.

Pool Scouts alleges that it "owns numerous trade secrets, including, but not limited to, client lists and files, methods of operation, . . . marketing, advertising, sales, and business systems, marketing strategies, and operations manuals that contain [Pool Scouts'] valuable and guarded trade secrets." Compl. ¶ 74. To demonstrate that these alleged trade secrets "derive[] independent economic value . . . from not being generally known to, and not being readily ascertainable" by others, Pool Scouts must "provide specific factual detail about the unique nature of these materials." *Power Home Solar, LLC v. Sigora Solar, LLC*, No. 3:20-cv-42, 2021 WL 3856459, at *9–10 (W.D. Va. Aug. 30, 2021) (quoting § 1839(3)). For customer lists, this includes information regarding "how they were developed and why the underlying customer information is not otherwise readily ascertainable by [Pool Scouts'] competitors in the relevant market." *Id.* (canvassing case law); *see also 360 Painting, LLC v. Misiph*, No. 3:22-cv-56, 2023 WL 4533932, at *7 (W.D. Va. July 13, 2023). A customer list must contain "more than publicly available information, even if it takes considerable effort to compile," otherwise, "it is not accorded

protection under the [Defend Trade Secrets Act]." *Art & Cook, Inc. v. Haber*, 416 F. Supp. 3d 191, 196 (E.D.N.Y. 2017).

Here, Pool Scouts alleges that its client lists "are not readily ascertainable by the public as they are disclosed only to franchisees in the operation of the franchised business pursuant to a franchise agreement." Compl. ¶ 77.[7] However, this assertion is nothing more than a conclusory statement that fails to rise to the level of plausibility required at this stage. Specifically, the assertion lacks information regarding how Pool Scouts' client lists "were developed and why they are not otherwise ascertainable in the market." *See 360 Painting, LLC*, 2023 WL 4533932, at *7. Without more, Pool Scouts has failed to allege that its client lists have independent economic value which is tied to the information's secrecy. *See JTH Tax LLC*, 2024 WL 897605, at *4–6;[8] *see also Art & Cook, Inc.*, 416 F. Supp. 3d at 195–96.

As Pool Scouts does not adequately allege the independent economic value of claimed trade secrets, it fails to allege the existence of a trade secret entirely. Thus, the Court need not examine the adequacy of Pool Scouts' allegations regarding reasonable measures taken to keep

---

[7]    Pool Scouts contends that "the material in the record on Pool Scouts' Motion for Preliminary Injunction" bolsters the sufficiency of its allegations. Resp. Defs.' Mot. at 8. The Court does not consider any information beyond the Complaint and the Franchise Agreements incorporated via the Complaint at this stage. *See King*, 825 F.3d at 212 (explaining that to avoid converting a motion to dismiss into a motion for summary judgment, courts must limit consideration to the complaint and certain attached documents integral to either the complaint or motion to dismiss, where the authenticity of those documents is not contested). Even if consideration of such materials was proper, the Court is unable to divine which specific materials Pool Scouts means to rely on in bolstering its allegations.

[8]    Pool Scouts attempts to distinguish its allegations from those in *JTH Tax* by pointing to various provisions in the Franchise Agreements. *See* Resp. Defs.' Mot. at 6–8. Although these provisions provide some "specific factual detail about the nature of [the alleged trade secrets]", they remain bereft of details relevant to independent economic value. *JTH Tax LLC*, 2024 WL 897605, at *6.

information secret. The Court must therefore find that Pool Scouts fails to state a claim for misappropriation under the Defend Trade Secrets Act. *See dmarcian, Inc.*, 60 F.4th at 141.

> ### b. Leave to Amend

Pool Scouts alternatively requests leave to amend. Generally, leave to amend should be freely granted. Fed. R. Civ. P. 15(a)(2). "[A] request to amend should only be denied if one of three facts is present: 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile.'" *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012) (citation omitted). There has been no evidence that Pool Scouts has acted in bad faith or that amendment would be prejudicial to Berridge. Berridge argues only in a conclusory manner that materials attached to the Motion for Preliminary Injunction show that any amendment would be futile. Reply Defs.' Mot. at 6. While Berridge does not specify which materials demonstrate that amendment would be futile, the materials are replete with factual conflicts and thus leave to amend is proper. *See Larsen v. AR Resources, Inc.*, No. 4:19-cv-41, 2019 WL 13252406, at *2 (E.D. Va. Oct. 24, 2019). The Court hereby grants Pool Scouts leave to file an amended complaint within fourteen (14) days of the entry date of this Order.

**C. Pool Scouts' Motion to Dismiss Counterclaim**

Berridge's Counterclaim asserts that Pool Scouts violated the Texas Deceptive Trade Practices Act ("DPTA") by misleading Berridge into entering into the Franchise Agreements. Countercl. ¶¶ 58–74. Berridge also brings claims for fraudulent inducement and constructive fraud. *Id.* ¶¶ 75–91. Pool Scouts moves to dismiss Berridge's Counterclaim. Pl.'s Mot., ECF No. 35. Berridge responded in opposition, Resp. Pl.'s Mot., ECF No. 43, and Pool Scouts replied,

Reply Pl.'s Mot., ECF No. 44. For the reasons stated below, the Court grants in part and denies in part Pool Scouts' Motion to Dismiss Berridge's Counterclaim.

1. Background[9]

As set forth above, Berridge's Counterclaim alleges he relied on various misrepresentations by Pool Scouts employees in deciding to become a Pool Scouts franchisee, including (a) confirming the accuracy and representativeness of the 2018 Disclosure; (b) asserting that franchisees could manage the business part-time without additional assistance and that "Berridge's intention of managing his business on a full-time basis would lead to faster growth and profitability;" (c) representing that "Pool Scouts franchisees would receive discounted pricing on supplies from Pool Scouts' exclusive supplier, POOLCORP[;]" and (d) contending that the 2020 Disclosure was an accurate and attainable model of profitability. Countercl. ¶¶ 13–38.

Berridge alleges that he eventually learned that Pool Scouts' representations were not true. *Id.* ¶¶ 22–45. Berridge alleges that Pool Scouts knew or should have known that certain representations were inaccurate and yet continued to provide the same information to franchisees. *Id.* ¶¶ 47–56. Stuart Road has not made a profit through its operation of a Pool Scouts franchise and has spent nearly $4 million on various operating expenses and expended over $300,000 attempting unsuccessfully to make Stuart Road profitable. *Id.* ¶¶ 49–50. Berridge would not have entered into any of the Franchise Agreements had he possessed accurate financial information about other franchisees, discounted pool supply pricing, or had he known about Pool Scouts' lack of expertise and experience in the industry. *Id.* ¶¶ 52–54.

---

[9]    The factual allegations forming the basis for Berridge's counterclaims are set out as they are pleaded in the Counterclaim, construing the facts in the light most favorable to Berridge. *See Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020).

2. Analysis

Pool Scouts seeks dismissal of Berridge's Counterclaim, arguing that the claims are barred by various releases, fail to state a claim as they are improperly brought under Texas law (or alternatively are covered by an exemption in Texas's law), fail to state a claim as they are barred by the statute of limitations, or otherwise fail to state a claim for fraud.

a. Choice of Law

Pool Scouts' first argument—that the Counterclaim is improperly brought under Texas law—turns on the Court's interpretation of the Franchise Agreements' choice of law provision. Each Franchise Agreement states, under the section heading "Governing Law," that the agreement "shall be interpreted and construed exclusively under the laws of the Commonwealth of Virginia, which laws shall prevail in the event of any conflict of law." Franchise Agreements ¶ 15.a., ECF No. 1-1. Pool Scout argues that this provision prohibits Berridge from bringing the DTPA claim, a cause of action under Texas law, because only Virginia law applies. Berridge counters that the choice of law provision applies only to contract claims but does not extend to tort claims. Accordingly, Berridge asserts that Texas law applies to the DTPA tort claim.

As a court "exercising supplemental jurisdiction over state law claims," this Court applies the choice of law rules of its forum state, Virginia. *What Hurts, LLC v. Volvo Penta of the Americas, LLC*, 710 F. Supp. 3d 502, 514 (E.D. Va. 2024). Generally, Virginia courts enforce contractual choice of law provisions, with limited exceptions. *See Tate v. Hain*, 25 S.E.2d 321, 324–26 (Va. 1943). However, where parties bring extra-contractual tort claims, the Supreme Court of Virginia has rejected the application of choice of law provisions to said tort claims, even when the choice of law provision is written in otherwise broad language. *See Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 493 S.E.2d 516, 519–21 (Va. 1997) (rejecting provision's applicability to a

fraud claim where provision stated the contract was "governed by and interpreted in accordance with the laws of the State of Michigan"); *see also R.T.O., Inc. v. Santa Barbara Bank & Trust, N.A.*, 86 Va. Cir. 62, 65 (Va. Cir. Ct. 2012) (applying Virginia law to tort claims where the choice of law provision required "all causes of action that arise from the contract to be governed by California law"); *Corinthian Mortg. Corp. v. ChoicePoint Precision Mktg., LLC*, No. 1:07-cv-832, 2008 WL 11374386, at *3 (E.D. Va. Apr. 4, 2008) (applying Virginia law to claims despite choice of law provision agreeing to application of Massachusetts law as the claims sounded in tort rather than contract).

Despite the categorical approach followed by Virginia courts, Pool Scouts argues that the choice of law provision at issue was written broadly enough to encompass Berridge's tort counterclaims. Here, the disputed choice of law provision requires only that the "agreement" be "interpreted and construed" under Virginia law. Franchise Agreements ¶ 15.a. The provision does not explicitly address causes of action generally, or tort claims specifically. This language is narrower than the choice of law provisions that Virginia courts have declined to apply to tort claims. Nonetheless, Pool Scouts argues that the Court should place great weight on the provision's use of the word "exclusively." Reply Pl.'s Mot. at 5 (noting that the Agreements state: "shall be interpreted and construed exclusively under the laws of the Commonwealth of Virginia"). But "exclusively" only modifies "interpreted and construed," meaning that only Virginia law will be used to interpret and construe the Agreements. Such a statement cannot be construed to extend beyond the interpretation and construction of the Agreements. *See Self Insured Servs. Co. v. Panel Sys., Inc.*, 352 F. Supp. 3d 540, 552 (E.D. Va. 2018) (finding that a choice of law provision's limitation to matters "related to contract interpretation and validity" meant that the law of another

forum governed tort claims).[10] As the Agreements' choice of law provisions do not apply, the Court will apply Virginia's choice of law rules to the counterclaims.[11]

Virginia courts adhere to *lex loci delicti* or "the law of the place of the wrong." *See generally McMillan v. McMillan*, 253 S.E.2d 662, 663 (Va. 1979). The law of the place of the wrong controls any tort action, and "the place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place." *See* Restatement (First) of Conflicts § 377; *see also Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986) (applying Virginia choice of law rules); *Hazelwood v. Lawyer Garage, LLC*, 904 S.E.2d 322, 327–29 (Va. Ct. App. 2024).

In actions for fraudulent inducement and related claims,[12] the place of the wrong is where a party was injured due to reliance on misrepresentations. *See Hazelwood*, 904 S.E.2d at 328 (explaining that where damage is an element of a tort, Virginia's choice of law rules counsel that the site of damages is the place of the wrong); *see also Jordan v. Shaw Indus., Inc.*, No. 96-2189, 1997 WL 734029, at *3 (4th Cir. Nov. 26, 1997) ("When a person sustains loss by fraud, the place of the wrong is where the loss is sustained." (quoting Restatement (First) Conflicts § 377 n. 4)).

---

[10]    Pool Scouts argues that the "enforcement" language in section 15 of the Agreements supports applying Virginia law to all disputes between the parties. Mem. Supp. Pl.'s Mot. at 8, ECF No. 36. The enforcement language does not expand the choice of law provision, but rather expressly discusses interpretation of certain covenants under the laws of other states. *Id.*

[11]    In arguing that the choice of law provision controls, Pool Scouts points to federal cases that it argues support the application of the provision to tort claims. Mem. Supp. Pl.'s Mot. at 6–8. These cases do not control this inquiry and must yield to Virginia's own enunciation of the law. *See Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1002 (4th Cir.1998) ("It is axiomatic that in determining state law a federal court must look first and foremost to the law of the state's highest court, giving appropriate effect to all its implications."). Regardless, the cases are distinguishable and not persuasive here.

[12]    The Court considers the DTPA claim to be a related claim for this analysis as the elements track those for common law fraudulent inducement and similarly require damage to the consumer.

Here, Berridge alleges that he was injured in Texas where he lives and operated Stuart Road. *See* Resp. Pl.'s Mot. at 6. Pool Scouts does not contest the site of the alleged injury. Accordingly, Texas law governs Berridge's Counterclaim and the DTPA is not inapplicable purely because of choice of law.

### b. Application of Releases

Pool Scouts also contends that the Counterclaim must be dismissed because Berridge signed several releases that bar the counterclaims. Berridge counters that any release of the DTPA claim is invalid under Texas law, that other releases are ineffective as they were entered into before Berridge knew about the facts supporting his claims, and that the entire relationship between the parties was based on fraudulent misrepresentation, thereby making any release voidable. Pool Scouts bears the burden of establishing the affirmative defense of release. *See Phoenix Sav. & Loan, Inc., v. Aetna Cas. & Sur. Co.*, 427 F.2d 862, 870 (4th Cir. 1970). Generally, a 12(b)(6) motion to dismiss "cannot reach the merits of an affirmative defense." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). It is only when the necessary facts for an affirmative defense "clearly appear on the face of the complaint" that the "defense may be reached by a [Rule 12(b)(6) motion]." *Id.* (cleaned up). After due consideration of the Counterclaim, the Court finds that there are insufficient facts on the face of the Counterclaim to rule on Pool Scouts' affirmative defense. *See Goodman*, 494 F.3d at 464.

The validity of a release under the DTPA hinges on whether it was executed prior to a transaction or after a controversy existed. *See Ostrow v. United Bus. Machs., Inc.*, 982 S.W.2d 101, 105 (Tex. App. 1998). From the facts on the face of the Counterclaim, the Court cannot yet determine whether Pool Scouts' affirmative defense that the DTPA claim is barred by release is meritorious. *See Masterson v. Commonwealth Bankshares, Inc.*, 2 F. Supp. 3d 824, 835 (E.D. Va.

2014) (finding that the suggestion of an affirmative defense from an amended complaint was "a far cry from conclusive proof that [the] affirmative defense [was] meritorious"). Additionally, the plain language of some of the releases covers only "presently known claims" and states "[f]ranchisee represents and warrants that it *presently knows* of no claims it has against Franchisor." *See e.g.*, Ex. 10, ECF No. 30-1 (emphasis added). While Pool Scouts asserts that Berridge could have discovered his alleged claims through due diligence prior to executing the releases, the Court must make all reasonable inferences in favor of Berridge at this stage. *See Mays v. Sprinkle*, 992 F.3d 295, 305 (4th Cir. 2021). Berridge alleges in the Counterclaim that he discovered misrepresentations beginning in July 2023. Counterclaim ¶¶ 42–43. Thus, it is not apparent, drawing reasonable inferences in Berridge's favor, whether the misrepresentations were "presently known" at the time of the release.

### c. DTPA Exemption

Pool Scouts next argues that an exemption under the DTPA—exempting a cause of action arising from a transaction, a project, or a set of transactions relating to the same project, involving total consideration by the consumer of more than $500,000—is applicable here. Tex. Bus. & Com. Code § 17.49(g). The Court finds that the threshold inquiry for exemption, the total consideration, is not apparent from the face of the Counterclaim.[13]

Pool Scouts claims that Berridge's damages sought under the DTPA, including lost costs of $643,174.27 and expenditures of $3,984,778.17, demonstrate that the total consideration by Pool Scouts was more than $500,000. Mem. Supp. Pl's Mot. at 9–10. Pool Scouts cites several cases in support, however, neither the cited cases nor additional cases examined by the Court

---

[13]    The Court also notes that Pool Scouts has not established that the franchises constitute "a project" under the DTPA exemption.

support Pool Scouts' expansive view of the proper consideration calculation. *See e.g.*, *E. Hill Marine, Inc. v. Rinker Boat Co.*, 229 S.W.3d 813, 821 (Tex. App. 2007) (premising the consideration calculation on the *promise to pay* for new boats (emphasis added)); *AES Valves, LLC v. Kobi Int'l, Inc.*, No. 01-18-00081-cv, 2020 WL 1880781, at *5 (Tex. App. Apr. 16, 2020) (finding that the exemption was met where the plaintiff *entered into a contract for* more than the statutory limit (emphasis added)); *Space Maker Designs, Inc. v. Weldon F. Stump & Co.*, No. 3:02-cv-0378, 2003 WL 21414726, at *2 (N.D. Tex. June 16, 2003) (defining consideration as the amount that induced entry into the contract). The total consideration here is properly calculated as the amount that Berridge agreed to incur to his detriment in exchange for opening the franchises, which is not apparent from the Counterclaim.[14] Thus, determining the merits of the affirmative defense would be inappropriate at the motion to dismiss stage. *See Goodman*, 494 F.3d at 464.

> *d. Statute of Limitations*

Pool Scouts' final affirmative defense maintains that the counterclaims are barred by the applicable statute of limitations. The Counterclaim is compulsory as it arises from the same transactions that are the subject matter of the original complaint. *See* Fed. R. Civ. P. 13(a). In the Fourth Circuit, compulsory counterclaims relate back to date of the filing of the original complaint, meaning that the statute of limitations for any counterclaim is properly calculated using the date a

---

[14] Texas courts have not determined "whether 'consideration' as used in the statute involves only detriment actually incurred by the consumer or detriment that a consumer promises to incur in the future." *Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 474 (Tex. Ct. App. 2004) (explaining that "[u]nder Texas case law, consideration is a present exchange bargained for in return for a promise. It consists of either a benefit to the promisor or a detriment to the promisee" (internal quotation marks and citation omitted)). Since neither amount is clear from the face of the Counterclaim, the Court need not examine this question at the motion to dismiss stage.

suit was initiated. *See Burlington Indus. v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir. 1982). The instant Complaint was filed on April 11, 2024. Compl.

Pool Scouts first argues that the Franchise Agreements' contractual limitation period of one year controls any counterclaims and precludes relief, as all counterclaims were or reasonably could have been discovered by April 11, 2023. At this stage, the Court cannot determine from the face of the Counterclaim whether this contractual limitation bars the claims. Taking all factual allegations as true and making all reasonable inferences in favor of Berridge, *King*, 825 F.3d at 212, it is plausible that Berridge could make out a claim for fraudulent inducement or under the DTPA. *See* Countercl. ¶¶ 29–31, 42–45, 47–48, 51–56. A showing of fraudulent inducement could negate the application of the Franchise Agreements and thus its limitation period. *See e.g.*, *George Robberecht Seafood, Inc.*, 255 S.E.2d at 683 (stating that fraudulent inducement "is always ground for rescission of the contract" (quoting *Wilson*, 21 S.E. at 244)). Accordingly, the Court cannot find that all the facts necessary to establish the contractual statute of limitations appear on the face of the Counterclaim. *See Touchom, Inc. v. Berreskin & Parr*, No. 1:07-cv-114, 2010 WL 582173, at *6 (E.D. Va. Feb. 12, 2010).

Pool Scouts next argues that Berridge's claims are, regardless, barred by the applicable state's statute of limitations.[15] As noted above, the Court, at the Rule 12(b)(6) stage, will only

---

[15]    As Pool Scouts recognizes, there are three potentially applicable statutes of limitations at issue regarding Berridge's counterclaims. Mem. Supp. Pl.'s Mot. at 11. Both the DTPA and Virginia fraud statutes of limitations provide that actions for fraud must be brought within two years of a claim's accrual. Tex. Bus. & Com. Code § 17.565; Va. Code Ann. § 8.01-243(A). Texas's fraud statute of limitations provides that actions for fraud must be brought within four years of a claim's accrual. Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4). All three statutes of limitations contain tolling mechanisms for discovery of misrepresentations or fraud. *See* Va. Code Ann. § 801.243(A); Tex. Bus. & Com. Code § 17.565; *Little v. Smith*, 943 S.W.2d 414, 420 (Tex. 1997) (discussing Texas's fraud statute of limitations).

dismiss claims based on a statute of limitations defense where all facts necessary to analyze such a claim appear on the face of the Counterclaim. *Touchom, Inc.*, 2010 WL 582173, at \*6. Only one of the misrepresentations claimed by Berridge meets this requirement. Berridge alleges that "[a]fter purchasing supplies and tools from POOLCORP for approximately six months" an employee informed him that he was not receiving discounted pricing. Countercl. ¶¶ 29–31. While the Counterclaim does not set out a date for this purchase, it does assert that Berridge formed Stuart Road in April 2018, that Pool Scouts' "exclusive supplier" was POOLCORP, and that Berridge hired his first technician in October 2018. *Id.* ¶¶ 13, 15, 22. Accordingly, the only reasonable inference from the face of the Counterclaim is that Berridge began purchasing pool supplies from POOLCORP sometime after April 2018 and prior to October 2018 when he hired a technician. Using even the latest possible date of October 2018, Berridge would have discovered the misrepresentation regarding discounted pricing by April 2019, meaning that a claim resting on these allegations expired no later than April 2023. *Id.* ¶¶ 29–31. The instant Complaint was filed on April 22, 2024. Accordingly, Berridge's claim regarding Pool Scouts' misrepresentation of discounted pool supplies is barred under either of the three applicable statutes of limitations. *See supra* n.15 (noting that the longest possible statute of limitations is four years).

As for Berridge's remaining alleged misrepresentations, the Court cannot properly conclude from the face of the Counterclaim when Berridge should have known or reasonably discovered the existence of claims so as to begin accrual under any of the statutes of limitations. As such, the Court cannot consider this affirmative defense as to Berridge's remaining claims. Accordingly, the Court will grant Pool Scouts' motion to dismiss as to Berridge's claim regarding alleged discount misrepresentation but will deny its motion to dismiss as to the remaining counterclaims.

*e. Failure to State a Claim*

Lastly, Pool Scouts contends that Berridge's allegations supporting his DTPA and fraudulent inducement claims fail to meet the heightened pleading standard for fraud. Under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting fraud," except that "conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The DTPA claim and common law fraudulent inducement require proof that the defendant made a material misrepresentation.[16]

Berridge alleges, among other misrepresentations, that Pool Scouts falsely represented that financial information in Pool Scouts' 2018 Disclosure, specifically profits and costs of the Virginia Beach Pool Scouts operation, was an accurate indication of expected costs and profits for franchisees. Countercl. ¶ 14. Additionally, Berridge claims that Item 19 of the 2020 Disclosure falsely represented "a franchisee's net profit margins, its administrative wages and benefits, and other operating costs." *Id.* ¶¶ 32, 76. Pool Scouts has grouped these allegations together and refers to them as Berridge's alleged "financial misrepresentation" in its briefing. *See* Mem. Supp. Pl.'s Mot. at 10–14.

---

[16]     Both claims, alleging common law fraudulent inducement and a violation of the DTPA, are governed by Texas law. *See supra* Part III.C.2.A. A fraudulent inducement claim requires proof that: (1) the defendant made a material *misrepresentation*; (2) the defendant knew at the time that the representation was false or lacked knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation; (4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury. *See Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019) (citation omitted). Berridge's claim under the DTPA requires proof that Berridge was a consumer under the DTPA, that Pool Scouts failed to disclose information "concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction which the consumer would not have entered had the information been disclosed[,]" and that Berridge detrimentally relied on those misrepresentations, causing injury. Tex. Bus. & Com. Code §§ 17.46(b), 17.50(a); *see Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996).

Pool Scouts contends that claims based on the alleged financial misrepresentation are not fraudulent as a matter of law as they were promises regarding future events and opinions rather than statements of fact. Pool Scouts points to Berridge's allegation that the Pool Scouts President told Berridge his business would eventually "be in a similar [profitable] position." Countercl. ¶ 33. Both parties cite Virginia case law regarding this argument, excepting a lone Texas case cited by Pool Scouts. *See* Reply Pl.'s Mot. at 15 (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998)). The Court has determined that Texas law governs the counterclaims and must analyze this argument accordingly.

Generally, expressions of opinion or predictions regarding the future are not actionable as material representations. *See IAS Servs. Grp., LLC v. Jim Buckley & Assocs., Inc.*, 900 F.3d 640, 649 (5th Cir. 2018) (applying Texas law). However, at times a prediction of future events can be so intertwined with "direct representations of present facts" that "the whole statement amounts to a representation of facts." *Trenholm v. Ratcliff*, 646 S.W.2d 927, 931 (Tex. 1983). Additionally, an opinion regarding a future event may be actionable "where the speaker purports to have special knowledge of facts that will occur or exist in the future" or when the opinion "is based on past or present facts." *Id.* at 930 (citations omitted).

The Pool Scouts President's statement, read in the light most favorable to Berridge, can be fairly read as being intertwined with direct representations of present facts. The statement that Stuart Road would eventually be profitable came directly after the President "assured Berridge that Pool Scouts' local operations were profitable as reflected in Item 19 of the 2020 Disclosure" and that "its franchisees were profitable." Countercl. ¶ 33. This statement necessarily followed from "direct representations of present facts" and arguably transformed the entirety of the assurance into a representation of facts. *See Trenholm*, 646 S.W.2d at 930–31 (finding that seller's

statement that a trailer park would be moved in the future was not an expression of an opinion where he also falsely represented that the trailer park had already been sold and that notice had been provided to tenants); *see also Burcum v. Gaston*, 196 S.W. 257, 259 (Tex. Civ. App. 1917).

Considering all allegations and taking them as true, Berridge has stated the circumstances of the fraud with sufficient particularity to survive the motion to dismiss. He alleges that Pool Scouts representatives made various misrepresentations at specific points in time. *See* Countercl. ¶¶ 11 (March 9, 2018); 13 (March 28, 2018); 32–33 (spring 2020). The assurances indicated are discrete circumstances pled with particularity as to the details of the speakers, the locations, and the content of the assurances. *See Dash BPO, LLC v. Lindberg*, No. 22-1146, 2024 WL 2874282, at *2 (4th Cir. June 7, 2024) ("[A] plaintiff must plead the time, place, and contents of the false representations." (citation omitted)). Given this level of specificity, Pool Scouts' argument that Berridge's financial misrepresentation allegations fail to state a claim either for fraudulent inducement or under the DTPA is unavailing.[17]

Finally, Pool Scouts asks the Court to consider an exhibit which purports to be "[a] true and accurate copy of Item 19 of Pool Scouts' 2018 Disclosure." Burch 2d Aff. ¶ 17, ECF No. 30; Item 19 Ex., ECF No. 30-15. Pool Scouts contends that review of that document demonstrates that Berridge's allegations regarding what information the 2018 Disclosure contains are inaccurate and should therefore be disregarded. At the motion to dismiss stage, the Court may only consider documents incorporated into the Counterclaim if they are both integral to the Counterclaim and

---

[17]    Pool Scouts also argues that Berridge's characterization of his fraud claims—stating that "allegations in the Counterclaim collectively tell the story" of fraudulent inducement—precludes any finding of particularity under Rule 9(b)'s heightened pleading standard. *See* Reply Pl.'s Mot. at 13–14. Berridge presented this collective characterization as part of a broader argument regarding the statute of limitations. *See* Resp. Pl.'s Mot. at 14. The Court declines to elevate a characterization based on the rebuttal of this defense over the face of the Counterclaim.

authentic. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011). Certainly, the 2018 Disclosure is likely both incorporated into the Counterclaim and integral to the Counterclaim. *See* Countercl. ¶¶ 10–11, 13–14, 44, 47, 65–67, 72, 76 (referencing the 2018 Disclosure). Unfortunately, the Court cannot determine whether the attached document is authentic. The document appears to be an excerpt from a much larger document, contains no title, and lacks other details suggesting authenticity. While it is true that the affidavit asserts the document is a true and accurate copy of Item 19 of the 2018 Disclosure, such statements are not properly considered at this juncture. *See E.I. du Pont de Nemours & Co.*, 637 F.3d at 449 ("[S]tatements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion."). Accordingly, the Court will not consider the attachment to Burch's affidavit in its ruling on the instant motion and will continue to credit Berridge's allegations regarding the 2018 Disclosure at the motion to dismiss stage.

### f. Election of Remedies

Pool Scouts also argues that Berridge must choose whether to seek damages, and thus affirm the contract, or to rescind the contract as relief for his fraudulent inducement claims. *See* Mem Supp. Pl.'s Mot. at 2 (citing *CGI Fed. Inc. v. FCi Fed., Inc.*, 814 S.E. 2d 183, 191 (Va. 2018)).[18] Pool Scouts' reliance on *CGI Fed. Inc.* is misplaced. *In CGI Fed. Inc.*, the Supreme Court

---

[18] Where federal courts exercise supplemental jurisdiction, they must adhere to the choice of law rules of the state in which they sit. Here, Virginia's choice of law rules govern the election of remedies question. These rules apply Virginia law to procedural questions, and foreign law, where applicable, to substantive questions. "The issue of election of remedies is generally considered a procedural matter . . . [so,] the law of the forum should apply." *X-It Prods., LLC v. Walter Kidde Portable Equip., Inc.*, 227 F. Supp. 2d 494, 523 (E.D. Va. 2002) (applying Virginia law on election of remedies). Accordingly, Virginia law applies here. The parties are advised that although the Court looks to Virginia's law in determining the required timing for election of remedies, the analysis of applicable law governing available remedies under the DTPA may be distinct. While election of remedies is "generally considered a procedural matter," *X-It Prods., LLC*, 227 F. Supp.2d at 523, there may be times where questions of remedies are so bound up in a foreign

of Virginia held that "[a] victim of fraudulent inducement may rescind the contract or affirm the contract and sue for damages;" it cannot do both. 814 S.E.2d at 191. The court's quote regarding the choice between rescission and damages came after the plaintiff expressly affirmed the contract, won a jury verdict for damages, and then tried to subsequently seek relief on an unjust enrichment claim, which necessarily required recission of the contract. *Id.* These facts are not analogous to the facts before the Court. Additionally, the plaintiff in *CGI Fed. Inc.* alternatively pled different remedies at the pleading stage—it was only "[p]rior to trial" that the trial court "severed the unjust enrichment claim for later resolution." *Id.* at 187; *see Power Home Solar, LLC*, 2021 WL 3856459, at *13 (discussing *CGI Fed. Inc.* and concluding that the plaintiff could plead both unjust enrichment and a Virginia Uniform Trade Secrets Act claim despite their alternative remedies). Accordingly, Berridge's Counterclaim is not defective on this ground.

For the reasons stated above, Pool Scouts' Motion to Dismiss the Counterclaim is granted in part and denied in part.

## IV.    MOTION FOR LEAVE TO FILE AMENDED COUNTERCLAIM

In his Motion for Leave to File Amended Counterclaim, Berridge seeks to add a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO").[19] Mot. for Leave, ECF No. 47. A copy of the proposed Amended Counterclaim was attached. ECF Nos. 48-1, 52-1. Pool Scouts responded in opposition, Resp. Mot. for Leave, ECF No. 49, and Berridge replied, Reply

---

state's substantive law as to become a substantive matter. Having found that the timing of election for the purpose of this question is governed by Virginia's law, the Court need not yet address this additional inquiry.

[19]    Berridge initially also sought leave to add a claim for negligence *per se* but subsequently withdrew that request. Reply Mot. for Leave, ECF No. 52.

Mot. for Leave, ECF No. 52. For the reasons stated below, the Motion for Leave to File Amended Counterclaim is denied.

## A. Legal Standard

Generally, leave to amend should be freely granted. Fed. R. Civ. P. 15(a)(2). "[A] request to amend should only be denied if one of three facts is present: 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile.'" *Mayfield*, 674 F.3d at 379 (citation omitted). Courts analyze futility by looking to general pleading standards—accordingly, futility exists "if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." *Katyle v. Penn Nat'l Gaming*, 637 F.3d 462, 471 (4th Cir. 2011). Failure to state a claim for futility purposes is analyzed under the Rule 12(b)(6) standard. *In re: Triangle Cap. Corp. Secs. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021). Accordingly, amendment would be futile where a proposed amended complaint fails to contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com*, 591 F.3d 250, 255–56 (4th Cir. 2009) (internal quotation marks omitted) (first quoting *Iqbal*, 556 U.S. at 678; and then *Twombly*, 550 U.S. at 570).

## B. Analysis

Berridge seeks to add Count IV, a RICO claim, alleging that Pool Scouts, its parent company, and various executives engaged in mail and wire fraud as part of a scheme to defraud potential franchisees. ECF No. 52-1 ¶¶ 98–113. Pool Scouts asserts that granting leave to amend would be futile as Count IV would be barred by various releases, is time barred, and fails to state a claim under Rule 12(b)(6). Specifically, Pool Scouts argues that the RICO claim is deficient because it: (1) fails to allege an enterprise distinct from Pool Scouts' regular business operations;

(2) fails to allege predicate acts for RICO with particularity; and (3) fails to allege a pattern of racketeering. The Court finds that Berridge's proposed RICO claim fails to adequately allege an enterprise.

To plausibly allege a RICO claim, Berridge must first allege the existence of an enterprise responsible for committing racketeering activity. *Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997). An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise is "a continuing unit that functions with a common purpose." *Boyle v. United States*, 556 U.S. 938, 948 (2009).[20] To adequately allege an association-in-fact enterprise, Berridge must allege "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946. Additionally, Berridge must allege "the existence of collaboration or agreement between the members of the enterprise." *Rojas v. Delta Airlines, Inc.*, 425 F. Supp. 3d 524, 537 & n.6 (D. Md. 2019) (noting that "some level of coordination is necessary in order for enterprise members to function as a continuing unit for a common purpose").

Berridge alleges that the following entities and individuals collectively constitute an enterprise: Buzz Franchise Brands, LLC (Pool Scouts' parent company), Pool Scouts, Pool Scouts' former President, Pool Scouts' Director of Franchise Development, Pool Scouts' Director of Operations, Buzz Chairman and CEO, and Buzz Chief Operating Officer (collectively, "The Pool

---

[20]    There is no reference in the Counterclaim to the entities and individuals comprising the alleged enterprise being a legal entity. Accordingly, the Court assumes for the purposes of its analysis that Berridge alleges that the identified two legal entities and five individuals are together an association-in-fact enterprise.

Scouts System"). *See* ECF No. 52-1 ¶ 99. He claims that the enterprises' purpose was to "intentionally defraud[]" Berridge, that "Pool Scouts and [its former President] engaged in a scheme to disseminate knowingly false financial information," and that the "Pool Scouts System created a plan or scheme to defraud potential and actual franchisees concerning the profitability of a Pool Scouts franchise." *Id*. ¶¶ 101–02, 106. Further, Berridge claims that the alleged enterprise stretched "from at least 2018 through the present day." *Id.* ¶ 109.

Berridge's allegations fail to adequately allege an association-in-fact enterprise because the proposed count does not sufficiently allege the three required structural features. *Boyle*, 556 U.S. at 948. First, Berridge fails to adequately allege that the enterprise operated with a shared purpose. Berridge alleges that Pool Scouts and its former president "engaged in a scheme to disseminate knowingly false financial information to potential franchisees" and that the other individual members of the enterprise "made several representations to Berridge" at a 2018 event. ECF No. 51-2 ¶¶ 16, 102. But these allegations speak only to the acts taken by each alleged member of the enterprise and provide no evidence that the members were functioning collectively to meet a shared common purpose. *United States v. Pinson*, 860 F.3d 152, 161–63 (4th Cir. 2017). Berridge's sole allegation of agreement amongst the Pool Scouts System members is the conclusory allegation that the alleged enterprise "created a plan or scheme to defraud" franchisees. ECF No. 52-1 ¶ 106. But that allegation lacks any specificity "as to how, when, or where this agreement actually occurred or who made what communications to bring the agreement about." *Rojas*, 425 F. Supp. 3d. at 538.

Berridge also fails to allege that the Pool Scouts System "operated with the . . . relationships the law requires." *Nunes v. Fusion GPS*, 531 F. Supp. 3d 993, 1006–07 (E.D. Va. 2021). As described above, Berridge's allegations describe individual conduct by the alleged members of the

enterprise. The allegations do not include "factual averments regarding the relationships between or among" the enterprise members or information on how they "functioned as a continuing unit." *Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462, 473 (D. Md. 2012) (cleaned up); *compare with Navient Sols., LLC v. Krohn & Moss, Ltd.*, No. 1:17-cv-1178, 2018 WL 6790654, at *6 (E.D. Va. July 26, 2018) (finding adequate allegations of relationships where the plaintiff alleged a "consistent referral process," and "express individual agreements" by members). In the absence of such allegations, Berridge's claims allege only "independent, parallel conduct" that does not rise "to the level of a RICO enterprise." *Nunes*, 531 F. Supp. 3d at 1006; *Rojas*, 425 F. Supp. 3d at 539.

Finally, Berridge fails to allege "longevity sufficient to permit" the Pool Scouts System members to pursue the alleged enterprise purpose. *Boyle*, 556 U.S. at 946. RICO's longevity requirement "demands proof that the enterprise had 'affairs' of sufficient duration to permit an associate to 'participate' in those affairs[.]" *Id.* Here, Berridge alleges that the enterprise continued "from at least 2018 through the present day." ECF No. 52-1 ¶ 109. While this period of time is likely of a sufficient duration for the alleged Pool Scouts System members to participate in the enterprise's affairs, the allegations are nonetheless insufficient "because the Court is left to guess when, exactly, the enterprise took shape." *Nunes*, 531 F. Supp. 3d at 1007; *see Navient Sols., LLC*, 2018 WL 6790654, at *6 (finding sufficient longevity where the alleged enterprise lasted for four years). Without any indication beyond conclusory statements of when the alleged members began "working together to achieve their enterprise's purpose," the Court cannot conclude that Berridge adequately establishes sufficient longevity to allege the existence of a RICO enterprise. *Navient Sols., LLC*, 2018 WL 6790654, at *6.

Without adequately pleading the "three structural features critical to support a RICO enterprise allegation," Berridge fails to state a claim under RICO. *See Nunes*, 531 F. Supp. 3d at

1006. Having made this finding, the Court need not consider Pool Scouts' other arguments. The Court finds leave to amend would be futile and Berridge's motion is denied. *See Nemet Chevrolet, Ltd.*, 591 F.3d at 255–56.

### V.    CONCLUSION

For the reasons stated above, Berridge's Motion for Leave to File Supplementary Evidence, ECF No. 41, is granted and Pool Scouts' Motion for Preliminary Injunction, ECF No. 6, is denied. The Court grants Pool Scouts leave to amend its Complaint and Berridge's Motion to Dismiss Count IV of the Complaint, ECF No. 21, is denied as moot. Pool Scouts' Motion to Dismiss the Counterclaim, ECF No. 35, is granted in part and denied in part. Berridge's Motion to Amend/Correct the Answer and Counterclaim, ECF No. 47, is denied. The Court will issue an accompanying Order.

The Clerk is directed to send an electronic copy of this Memorandum Opinion to all counsel of record.

_____
                              /s
                              Elizabeth W. Hanes
                              United States District Judge

Date: <u>March 31, 2025</u>
Norfolk, Virginia

41